Opinion
 

 NEWSOM, J.
 

 In the early morning hours of September 16, 1976, Sarah S. was returning to her San Francisco apartment, having finished her shift as a waitress at Russo’s Restaurant. Near the intersection of Haight and Ashbury, she was set upon by appellant, who, wielding a butcher knife and threatening to kill her, marched her down the street.
 

 Pushing her into a nearby alley, appellant robbed Sarah at knifepoint, taking from her two rings, two bracelets and $30 in cash. Still holding the knife to her throat, he raped her, then forced her to dress, marched her away for two blocks, and raped her again.
 

 After the second rape was completed, appellant became apprehensive because nearby lights were turned on. He forced Sarah to accompany him into a nearby schoolyard, and down several levels to the basement, where he took her wallet from her purse and removed her I.D. card. He then took her to another, more remote, area of the schoolyard, where he again raped her, then forced her at knifepoint to commit mutual acts of oral copulation.
 

 Throughout this ordeal appellant repeatedly struck and threatened to kill Miss S. Finally satiated, he accompanied her to her apartment, where he released her, but only after she had seen his face clearly in the hall light.
 

 Immediately after her release, Miss S. telephoned the police, giving them the essential details of the attack.
 

 
 *776
 
 Sometime later, on the afternoon of October 7, 1976, Miss S. in the company of her boyfriend, spotted appellant walking on Clayton Street. She called the police, who arrested appellant.
 

 On November 5, 1976, appellant was charged with violations of Penal Code section 207 (kidnaping—later amended to Pen. Code, § 209); with three counts of Penal Code section 261, subdivision 3 (rape); with one count of Penal Code section 211 (robbery); with four counts of Penal Code section 288a (oral copulation, two of which were later dropped); and with being armed with a concealed deadly weapon in each offense except the robbery.
 

 After a mistrial on January 8, 1977, appellant was convicted by a jury on every count except that charging violation of Penal Code section 209, as to which he was convicted of the lesser included offense of Penal Code section 207. The jury also found all of the arming allegations to be true.
 

 Appellant advances four major arguments in support of a reversal. We shall consider these in the order presented.
 

 I
 

 The first assignment of error involves the testimony of one Jimmy Nunn, an acquaintance of appellant, who testified that the latter had spoken of his plans on the day of his arrest to “clip some people off,” by which, he explained, he meant in general to rob someone. Nunn also testified that appellant told him, as they neared Miss S. apartment, that he had “killed and raped a lady,” and he showed Nunn a modified seven-inch butcher knife he was carrying. Finally, on cross-examination, Nunn testified that appellant on the same occasion discussed with him his recent robbery of a Haight Street liquor store.
 

 All of this testimony was admitted over objection, subject to a motion to strike later made and denied.
 

 Appellant contends that the admission of such hearsay evidence of other offenses was irrelevant and prejudicial.
 

 We observe first that the subject statements do fall squarely within the admissions exception to the hearsay rule. In
 
 People
 
 v.
 
 Allen
 
 (1976) 65 Cal.App.3d 426 [135 Cal.Rptr. 276], the court observed that: “Evidence
 
 *777
 
 Code section 1220 creates an exception to the hearsay rule for the admission of a party. The section states simply that ‘[ejvidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party . . . .’ Section 1220 assumes that evidence of a party-declarant’s statement is hearsay evidence because it is being offered to prove the truth of the matter stated in such statement. This is the definition of hearsay evidence. (Evid. Code, § 1200, subd. (a).) [¶] It is to be noted that Evidence Code section 1220 does not define when a declarant-party’s extrajudicial hearsay statement becomes
 
 relevant
 
 to be admissible against such party under the personal admission exception to the hearsay rule. It is obvious, however, that, for such a statement to be admissible against a party as an admission, the statement must assert facts which would have a tendency in reason either (1) to prove some portion of the proponent’s cause of action, or (2) to rebut some portion of the party declarant’s defense.” (P. 433.)
 

 Evidence in the form of admissions that appellant intended to rob occupants at Miss S.’s apartment was relevant because it tended to show he knew his victim, as well as because it disclosed a common plan, or modus operandi, involving robbery with a butcher knife. (See
 
 People
 
 v.
 
 Matson
 
 (1974) 13 Cal.3d 35, 40 [117 Cal.Rptr. 664, 528 P.2d 752];
 
 People
 
 v.
 
 Haston
 
 (1968) 69 Cal.2d 233, 246 [70 Cal.Rptr. 419, 444 P.2d 1];
 
 People
 
 v.
 
 Thornton
 
 (1974) 11 Cal.3d 738, 755-757 [cert.den., (1975) 420 U.S. 924 (43 L.Ed.2d 393, 95 S.Ct. 1118)];
 
 People
 
 v.
 
 Harris
 
 (1977) 71 Cal.App.3d 959, 964 [139 Cal.Rptr. 778];
 
 People
 
 v.
 
 Enos
 
 (1973) 34 Cal.App.3d 25, 34-35 [109 Cal.Rptr. 876]. Cf.
 
 People
 
 v.
 
 Williams
 
 (1970) 10 Cal.App.3d 638, 643 [89 Cal.Rptr. 143].)
 

 Appellant practically concedes this to be so, but asserts that the trial court had a duty,
 
 sua sponte,
 
 to give a limiting instruction to the effect that the jury could not consider this evidence for the general purpose of weighing appellant’s guilt or innocence.
 

 We disagree, particularly because the disputed evidence was in our view admissible on the separate basis set out in Evidence Code section 1101, subdivision (b): “Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) other than his disposition to commit such acts.”
 

 
 *778
 
 In
 
 People
 
 v.
 
 Donnell
 
 (1975) 52 Cal.App.3d
 
 762, 774
 
 [125 Cal.Rptr. 310], the court collates the general rules relating to section 1101. “In the application of this rule to criminal cases the general test of admissibility is whether the evidence tends logically, naturally and by reasonable inference, to establish any fact material for the People, or to overcome any material matter sought to be proved by the defense.
 
 (People
 
 v.
 
 Schader
 
 (1969) 71 Cal.2d 761, 775 .. . .) [¶] ‘ “If it does, then it is admissible, whether it embraces the commission of another crime or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not.” ’
 
 (People
 
 v.
 
 Peete
 
 (1946) 28 Cal.2d 306, 315 . . . .) [¶] It is for the trial court to determine whether the probative value is outweighed by the possible prejudicial effect and to admit or exclude it accordingly.
 
 (People
 
 v.
 
 Greene
 
 (1973) 34 Cal.App.3d 622, 635 . . . .) [¶] ‘Probative value and prejudice obviously are not commodities subject to quantitative measurement. . . . The chief elements of probative value are relevance, materiality and necessity. [¶] [T]he court must ascertain that the evidence (a) “tends logically, naturally and by reasonable inference” to prove the issue upon which it is offered; (b) is offered upon an issue which will ultimately prove to be material to the People’s case; and (c) is not merely cumulative with respect to other evidence which the People may use to prove the same issue. . . .’
 
 (People
 
 v.
 
 Schader, supra,
 
 71 Cal.2d 761 at pp. 774-775.)”
 

 Applying these principles to the present circumstances, we find no error in admission of the evidence or denial of motions to strike it.
 

 II
 

 Appellant next argues that the trial court erred in admitting tape recordings of the victim’s telephone calls to the police.
 

 As part of the prosecution’s case tape recordings of the victim’s call of September 10 reporting the crime, and of October 7 reporting her sighting of appellant, were admitted into evidence as falling under the “fresh complaint” exception to the hearsay rule, and to show the emotional condition of the victim at the time of the calls.
 

 We believe that appellant’s objections to such evidence were properly overruled.
 

 In
 
 People
 
 v.
 
 Burton
 
 (1961) 55 Cal.2d 328, 351 [11 Cal.Rptr. 65, 359 P.2d 433], the court discusses the fresh complaint doctrine as follows: “In a
 
 *779
 
 case such as the present, where the nonconsenting victim of a sex offense testifies to its commission, the theory of admissibility of evidence of a complaint which is consistent with her testimony and which is not a spontaneous declaration which might be excepted from the hearsay objection is this: It is natural to expect that the victim of such a crime would complain of it, and
 
 the prosecution can show the fact of complaint to forestall the assumption that none was made and that therefore the offense did not occur. (People
 
 v.
 
 Wilmot
 
 (1903) 139 Cal. 103, 105 . . .; 4 Wigmore, Evidence [3d ed., 1940], § 1135.) . . . [¶] We agree with the reasoning of those cases which point out that testimony to the bare fact that the victim ‘made a complaint’ as to an unspecified subject matter on its face would be meaningless; if the complaint did not relate to the alleged offense and (assuming that the victim identified the perpetrator) to the defendant, it would be immaterial to the proof of the People’s case; but from the mere receipt of such evidence offered by the prosecution it seems inevitable that the jury would infer that the complaint was that the defendant committed the offense.
 
 We therefore accept the view that although details cannot be recounted, it can be shown by the People ‘that the complaint related to the matter being inquired into, and not a complaint wholly foreign to the subject' (People
 
 v.
 
 Swist
 
 (1902),
 
 supra,
 
 136 Cal. 520, 524 [69 P. 223]);
 
 that is, the alleged victim’s statement of the nature of the offense and the identity of the asserted offender, without details, is proper.”
 
 (Italics added. See also
 
 People
 
 v.
 
 Brown
 
 (1973) 35 Cal.App.3d 317, 323-324 [110 Cal.Rptr. 854];
 
 People
 
 v.
 
 Alfaro
 
 (1976) 61 Cal.App.3d 414, 428 [132 Cal.Rptr. 356];
 
 People
 
 v.
 
 Butler
 
 (1967) 249 Cal.App.2d 799, 805 [57 Cal.Rptr. 798]. See generally, Witkin, Cal. Evidence (2d ed. 1966) § 543, p. 515.)
 

 It is true, as appellant argues, that neither the emotional condition nor state of mind of the victim were yet in issue;
 
 Burton,
 
 however, sanctions the admission of such evidence merely to “forestall” the assumptions that no complaint was made and that therefore the offense did not occur.
 

 We think that the
 
 Burton
 
 rule applies where, as here the tape contains nothing more than the victim’s name and address, a description of her assailant, and a general description of the crime. We think the tapes are admissible, too, as spontaneous declarations under Evidence Code section 1240. As said in
 
 People
 
 v.
 
 Butler, supra,
 
 249 Cal.App.2d 799, 804-805: “As stated in
 
 Showalter
 
 v.
 
 Western Pacific R. R. Co.
 
 (1940) 16 Cal.2d 460, 468 ... to render spontaneous declarations admissible ‘it is required that (1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous
 
 *780
 
 and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it. (Wigmore on Evidence, [2d ed.], § 1750.)’ ”
 

 III
 

 Appellant’s argument that the prosecutor was guilty of misconduct rests chiefly on his having commented on Nunn’s “other crimes” testimony. Since we have concluded that such testimony was admissible to show, inter alia, a common plan or scheme, we do not agree that such comments constituted misconduct.
 

 Appellant also points to what he views as irrelevant and prejudicial comments by the prosecutor in his final argument, referring specifically to the following remarks: “If, ladies and gentlemen, when you get in that jury room to deliberate you find yourselves in the minority saying well, I agree with you, I think he is guilty, but I don’t think it has been proven to me beyond a reasonable doubt, ask yourselves why do more other people seek to think they are convinced, that they are convinced beyond a reasonable doubt.”
 

 No objection was made to the above statements at trial. We think it appropriate to add, however, that appellant’s reliance on
 
 People
 
 v.
 
 Gainer
 
 (1977) 19 Cal.3d 835 [139 Cal.Rptr. 861, 566 P.2d 997] in this connection is misplaced, since
 
 Gainer
 
 dealt with coercive jury instructions. Moreover, the quoted statements must be read in context. Thus: “If you now have a feeling after the Court instructs you that this man is guilty, but you really have some doubt, ask yourselves a question. What is it that makes me think that Mr. Panky is guilty? It has to be the evidence, doesn’t it, because that is all you have before you. If, ladies and gentlemen, when you get in that jury room to deliberate you find yourselves in the minority saying well, I agree with you, I think he is guilty, but I don’t think it has been proven to me beyond a reasonable doubt, ask yourselves why do more other people seek to think they are convinced, that they are convinced beyond a reasonable doubt.
 
 Air your views. Explain if you can why it is that you choose to believe Mr. Panky and not the overwhelming testimony.
 
 ” (Italics added.)
 

 Finally, appellant argues that the prosecution committed misconduct by referring to matters not in evidence in the following statement: “On
 
 *781
 
 September 10th, he (appellant) admits that there isn’t a soul in the world other than him and Sarah S. who can testify as to where he was.”
 

 An objection that this was a misstatement of the evidence was sustained.
 

 A mere reference to matters not in evidence, or a misstatement of the evidence which is a result of inadvertence or honest mistake, is not prejudicial misconduct. (Witkin, Cal. Criminal Procedure (1963) § 454, p. 457.) The prosecutor made a further statement, after the court’s ruling, as follows: “Thank you, and again, ladies and gentlemen, if I made a mistake or if I misstated the evidence, you follow your thinking on it. My recollection was that after I had asked a question a certain way, I again asked him if there was anyone else that could testify as to the time and wasn’t he in fact alone and he said, ‘yes, between 12:30 and 4:00 o’clock that morning.’ He was all alone. Listen to the stoiy he told you about September 10.” In the light of such further statement we regard the matter as innocuous.
 

 IV
 

 After trial and conviction, appellant was sentenced to state prison on all charges, the sentence on robbery to run consecutively to the others, which were ordered to be served concurrently.
 

 Appellant argues that this was double punishment, and, specifically, that: “. . . it was improper to sentence him separately on Count I, kidnapping (Pen. Code § 207) because this offense arose from the same course of conduct involved in Count II (Pen. Code § 261.3), Count IV (Pen. Code § 261.3), Count V (Pen. Code § 288a), Count VI (Pen. Code § 288a) and Count VII (Pen. Code § 261.3).” Appellant further contends that, “Separate sentences for the convictions in counts II, IV, V, VI and VII violate the prohibition against double punishment contained in Penal Code section 654.”
 

 Penal Code section 654 provides as follows: “An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other.”
 

 
 *782
 

 People
 
 v.
 
 Beamon
 
 (1973) 8 Cal.3d 625, 639 [105 Cal.Rptr. 681, 504 P.2d 905], sets forth the general principles of construction respecting section 654: “This court has thus construed section 654 to be applicable to limit punishment for multiple convictions arising out of either an act or omission or a course of conduct deemed to be indivisible in time, in those instances wherein the accused entertained a principal objective to which other objectives, if any, were merely incidental. The initial inquiry in any section 654 application is to ascertain the defendant’s objective and intent. If he entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.”
 

 This analysis is for the trial court. As stated in
 
 People
 
 v.
 
 Scott
 
 (1966) 247 Cal.App.2d 371, 375-376 [55 Cal.Rptr. 525]: “Contrary to the supposition of the trial judge, the appellate court is not in a position to do what the trial court failed to do. Since the divisibility of the transaction depends in part upon the intent of the defendant, a factual issue is presented. It is the function of the trial court, after seeing and hearing the witnesses, to determine this factual matter which controls the number of sentences to be imposed. A reviewing court is not the place to try facts.”
 

 We are accordingly limited in our function to determining whether substantial evidence supports the trial court’s finding that the subject offenses were to some extent divisible and reflective of multiple criminal objectives.
 

 Our inquiry in this regard begins with a consideration of the kidnaping.
 

 Section 207 reads as follows: “Every person who forcibly steals, takes, or arrests any person in this state, and carries him into another country, state, or county, or into another part of the same county, or who forcibly takes or arrests any person, with a design to take him out of this state, without having established a claim, according to the laws of the United States, or of this state, or who hires, persuades, entices, decoys, or seduces by false promises, misrepresentations, or the like, any person to go out of this state, or to be taken or removed therefrom, for the purpose and with the intent to sell such person into slavery or involuntary servitude, or otherwise to employ him for his own use, or to the use of another, without the free will and consent of such persuaded person; and every person who, being out of this state, abducts or takes by force or fraud any person
 
 *783
 
 contrary to the law of the place where such act is committed, and brings, sends, or conveys such person within the limits of this state, and is afterwards found within the limits thereof, is guilty of kidnaping.”
 

 It is speculative to say whether the subject kidnaping was primarily motivated by robbery or by sexual gratification, and, of course, the order in which the particular crimes were committed is of no value in the analysis, since the interval separating the various offenses was relatively brief.
 

 What is clear, however, is that the kidnaping had no independent purpose, but was definitely connected with one or another or all of the crimes which followed it.
 

 We think that under these circumstances it was error to separately sentence appellant to state prison on the kidnaping, even though the sentence was made concurrent with those imposed for the clearly distinct offenses of rape and oral copulation.
 

 A veiy similar result was reached in
 
 People
 
 v.
 
 Laster
 
 (1971) 18 Cal.App.3d 381 [96 Cal.Rptr. 108], where the alleged kidnaping was committed in connection with a robbery and rape, and the victim was held for five hours and transported two miles before escaping.
 

 There the court viewed as crucial the determination whether the asportation, though substantial, was incidental to the commission of the offenses which were its objectives, and did not increase the risk of harm over and above that necessarily present in the commission of such related offenses. (18 Cal.App.3d at p. 391. Cf.
 
 People
 
 v.
 
 Schafer
 
 (1970) 4 Cal.App.3d 554, 560 [8 Cal.Rptr. 464].)
 

 We think the
 
 Laster
 
 reasoning equally applicable here, where the kidnaping may have been predominantly motivated by either offense but was certainly necessarily part of a continuous course of conduct involving one or another of the offenses of robbery, rape and oral copulation. Under these circumstances, even though the kidnaping may have been completed before any subsequent offense was committed, the prohibition against multiple punishment requires a reversal insofar as the judgment below imposes sentences for the kidnaping as a separate offense.
 

 The judgment of the trial court is accordingly modified to stay the imposition of sentence for violation of Penal Code section 207 until
 
 *784
 
 appellant has completed the remainder of his sentences at which time the stay shall become permanent, and in all other respects it is affirmed.
 

 Racanelli, P. J., and Elkington, J., concurred.
 

 A petition for a rehearing was denied August 10, 1978. On August 10 and 23, 1978, the opinion was modified to read as printed above. Appellant’s petition for a hearing by the Supreme Court was denied September 7, 1978.