[No. A018752. First Dist., Div. Two. Aug. 10, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
LEON RONALD BURNS, Defendant and Appellant.

**COUNSEL**

Quin Denvir and Frank O. Bell, Jr., State Public Defenders, under appointment by the Court of Appeal, George L. Schraer and Mark Fogelman, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Georia F. DeHart and Ronald D. Smetana, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KLINE, P. J.**—Appellant Leon Ronald Burns was charged with rape (Pen. Code, § 261, subd. (2)),[1] kidnaping (§ 207), and forcible oral copulation (§ 288a, subd. (c)). Firearm use allegations were set forth in connection with each count (12022, subd. (b)).

---

[1]All subsequent references are to the Penal Code unless otherwise noted.

After pleading not guilty to all of the charges and denying the use allegations, appellant was advised of his right to counsel and indicated to the court that he wished to represent himself at trial.

A jury trial was commenced, and appellant represented himself at the proceedings. On the third day of trial appellant withdrew his plea of not guilty and entered a guilty plea as to each count in the information and admitted the use allegations. Thereafter, the court sentenced appellant to a principal term of six years (the middle term) for the rape count, *a full consecutive term* of five years (the middle term) for the kidnaping count, and a concurrent term of six years (the middle term) for the oral copulation count. The firearm use enhancements were stricken.

As will appear, the People concede that the sentence imposed is legally defective. The genuine issue before us, therefore, is whether to remedy this defect ourselves or, in the alternative, remand the case so as to permit the trial court to do so. The practical consequences of the alternatives are significantly different.

## FACTS

The facts pertinent to the issue are as follows. Monica Z., the victim of the rape, testified that on the day in question she was waiting on a street corner for a bus which was to take her to high school. Monica noticed appellant at the bus stop when he asked her if she was finished with a public phone she was then using. After appellant took the phone and completed his call, he approached Monica from behind, told her to turn around, and forced her at gunpoint into his car. Appellant drove the victim some 36 blocks to a secluded place behind a garage. The trip took approximately five to eight minutes. Appellant then forced Monica into the back seat of the car where he raped and orally copulated her. Shortly thereafter, appellant allowed Monica to leave the car and drove off.

Appellant's testimony related a different version of the facts leading to the rape. He acknowledged that he first met Monica on the morning of the rape when he stopped to use a phone at the bus stop where she was waiting. He claims, however, that he did not force Monica into the car, but that he offered to drive her to school and that she accepted. Appellant testified that when he offered to give Monica a ride he did not intend to kidnap or rape her, but intended only to take her to school. Appellant claims they engaged in pleasant conversation during the drive to her high school and that he did not threaten her in any way. Appellant testified that shortly before reaching Monica's school "all of a sudden that desire just cropped up in [his] heart and she became very appealing and attractive to the point where [he] was

excited" and he "swung the car around . . . , went to the vacant lot, and . . . proceeded to rape Monica Z."

DISCUSSION

■ Where a defendant perpetrates a kidnaping for the purpose of committing a rape, it contravenes section 654[2] to impose separate consecutive sentences for both offenses. (*People* v. *Masten* (1982) 137 Cal.App.3d 579, 588-589 [187 Cal.Rptr. 515]; *People* v. *Panky* (1978) 82 Cal.App.3d 772, 783 [147 Cal.Rptr. 341]; *People* v. *Rocco* (1971) 21 Cal.App.3d 96, 109-110 [98 Cal.Rptr. 365]; *People* v. *Laster* (1971) 18 Cal.App.3d 381, 393-395 [96 Cal.Rptr. 108]; *People* v. *Flores* (1968) 267 Cal.App.2d 452, 459-460 [73 Cal.Rptr. 118]; *People* v. *Livingston* (1967) 252 Cal.App.2d 630, 636-637 [60 Cal.Rptr. 728]; *People* v. *Nelson* (1965) 233 Cal.App.2d 440, 445-446 [43 Cal.Rptr. 626]; *People* v. *Bynes* (1963) 223 Cal.App.2d 268, 272-273 [35 Cal.Rptr. 633].) However, where a defendant kidnaps a victim for one purpose, and then later forms an intent to rape, he may be punished for both kidnaping and rape. (*In re Ward* (1966) 64 Cal.2d 672, 677-678 [51 Cal.Rptr. 272, 414 P.2d 400]; *People* v. *Ratcliffe* (1981) 124 Cal.App.3d 808, 814-819 [177 Cal.Rptr. 627].)

The parties now agree that there is no evidence in the record to support a finding that appellant kidnaped Monica for one purpose and then later formed an intent to rape her. Accordingly, the parties also agree, as we do, that it was legal error to sentence appellant to consecutive terms for the kidnaping and the rape.

■ Relying on *In re Adams* (1975) 14 Cal.3d 629 [122 Cal.Rptr. 73, 536 P.2d 473], and *People* v. *Masten, supra,* 137 Cal.App.3d 579, appellant contends that the appropriate remedy is for us to simply stay execution of the sentence imposed for the lesser offense of kidnaping and require such stay to become permanent when the sentence imposed for the greater offense of rape is complete. (14 Cal.3d at pp. 636-637; 137 Cal.App.3d at p. 590.) The practical effect of this approach would be to decrease appellant's sentence from eleven to six years.

The People, on the other hand, maintain that the case should be remanded to the trial court for resentencing in the manner prescribed by law. On

---

[2]Section 654 provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an accqual or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

remand the trial judge would have a number of sentencing choices which would permit him to impose a sentence of more than six years.[3]

In arguing that remand is improper, appellant places considerable reliance upon our statement in *People* v. *Masten, supra,* 137 Cal.App.3d 579, that "[t]he appropriate procedure for remedying a section 654 violation is to stay execution of the sentence imposed for the lesser offense, such stay to become permanent when service of sentence for the greater offense is completed." (At p. 590, citing *In re Adams, supra,* 14 Cal.3d 629, 636-637.) In *Masten,* however, the case was actually returned to the trial court for resentencing because other sentencing error in that case (an improper enhancement) required remand. (*Masten, supra,* at pp. 590-591.) Moreover, upon remand, the maximum reduction in sentence the defendant in *Masten* could have achieved was 20 months. Thus, we were not in *Masten,* as we are here, directly confronted with the question whether to permit a convicted criminal defendant to *substantially* benefit from fortuitous sentencing error.

Contrary to appellant's assertion, the rule articulated in *Masten* did not purport to be and is not the exclusive remedy for section 654 error. Although *Masten* was decided after the effective date of the determinate sentencing law (DSL) (Stats. 1976, ch. 1139, § 1 et seq.), the remedy articulated in that case has its roots in cases decided under the former indeterminate sentencing law (ISL).[4] Pursuant to the ISL, the Adult Authority had

---

[3]For example, the trial judge could properly impose full consecutive sentences for the rape and oral copulation counts (§ 667.6, subd. (c); *People* v. *Perez* (1979) 23 Cal.3d 545, 552-554 [153 Cal.Rptr. 40, 591 P.2d 63]; *People* v. *Panky, supra,* 82 Cal.App.3d 772, 781-784), or he could treat the rape as the principal term and impose a consecutive sentence for the oral copulation pursuant to section 1170.1. (See *People* v. *Belmontes* (1983) 34 Cal.3d 335, 345-346 [193 Cal.Rptr. 882, 667 P.2d 686].)

[4]The *Masten* remedy was derived from a pre-DSL Supreme Court case, *In re Adams, supra,* 14 Cal.3d 629. *In re Adams* was apparently the first case to outline the *specific* remedy of staying the punishment for the lower term such stay to become permanent when the sentence imposed for the greater offense is complete. (*Id.,* at pp. 636-637.) In formulating this rule, the *Adams* court relied on *In re Wright* (1967) 65 Cal.2d 650, 657 [56 Cal.Rptr. 110, 422 P.2d 998], in which the court stated that "the appropriate procedure at the appellate level [in remedying section 654 error] is to eliminate the effect of the judgment as to the less severely punishable offense insofar as penalty alone is concerned." (*Id.,* at p. 656.) *Wright,* in turn, relied on *People* v. *McFarland* (1962) 58 Cal.2d 748 [26 Cal.Rptr. 473, 376 P.2d 449]. In *McFarland,* the Supreme Court made it clear that since section 654 proscribes double *punishment,* but not double *conviction,* the appropriate procedure was to eliminate the effect of the judgment as to the lesser offense *insofar as the penalty alone is concerned.* (*Id.,* at pp. 762-763.) Prior to *McFarland,* some cases (e.g., *People* v. *Brown* (1958) 49 Cal.2d 577, 593-594 [320 P.2d 5]) had reversed the "judgment of conviction" without qualification, thereby eliminating the conviction as well as the punishment. In *McFarland,* the Supreme Court also made it clear that a sentence imposed in contravention of section 654, and later reversed by an appellate court, was not to be considered by the Adult Authority in fixing punishment. (*McFarland, supra,* 58 Cal.2d at p. 763.)

broad discretion, within constitutional limits, to set a term which it believed was appropriate to the particular offense and the individual offender. (See *In re Rodriguez* (1975) 14 Cal.3d 639, 645, 652 [122 Cal.Rptr. 552, 537 P.2d 384]; *People* v. *Wingo* (1975) 14 Cal.3d 169, 174, 182-183 [121 Cal.Rptr. 97, 534 P.2d 1004]; Cassou & Taugher, *Determinate Sentencing in California: The New Numbers Game* (1978) 9 Pacific L.J. 5, 8-9. Comment, *Senate Bill 42—The End of the Indeterminate Sentence* (1977) 17 Santa Clara L.Rev. 133, 135-136; Oppenheim, *Computing a Determinate Sentence . . . New Math Hits the Courts* (1976) 51 State Bar J. 604, 605.)[5] For this reason, consecutive sentences judicially imposed under the ISL had a significantly different and less important effect than do those now imposed under the DSL. "While under the old law one thought of consecutive sentencing simply as a mode of sentencing and not a penalty like arming or use, [under the DSL] it is now listed as an enhancement in Penal Code Section 1170(b) and it *does* involve a computation that adds a numerical increment to the term." (Cassou & Taugher, *supra*, 9 Pacific L.J. at p. 53, fn. 356, italics added; see also p. 56.)

Thus, under the ISL, staying a consecutive sentence imposed in violation of section 654 had little if any impact on the term actually served by a prisoner. Under the DSL, however, staying a consecutive sentence will result in a direct and calculable decrease in the sentence—in the instant case from eleven to six years. We do not believe that the interests of justice would be served if we were to slavishly adhere to prior decisions with respect to an issue not there considered in the context that confronts us now, and thereby confer a windfall on the defendant at the expense of the legitimate interests of the People in having an appropriate sentence pronounced. As noted in *People* v. *Savala* (1983) 147 Cal.App.3d 63 [195 Cal.Rptr. 193], a defendant's aggregate prison term under the DSL "cannot be viewed as a series of separate independent terms, but rather must be viewed as one prison term made up of interdependent components. The invalidity of some of those components necessarily infects the entire sentence . . . . In making its sentencing choices in the first instance the trial court undoubtedly considered the overall prison term to be imposed . . . . When defendant successfully urged the illegality of his sentence on appeal the illegality did not relate only to a portion of the sentence but infected the whole." (*Id.*, at pp. 69-71.)[6]

---

[5]As one commentator noted: "The Authority had the right to determine and redetermine the total length of the term within statutory guidelines which were so broad as to be virtually meaningless." (Oppenheim, *supra*, 51 State Bar J. at p. 605.)

[6]As recognized in *Savala*, there is contrary authority. (*Id.*, at p. 68; see *People* v. *Espinoza* (1983) 140 Cal.App.3d 564 [189 Cal.Rptr. 543]; *People* v. *Drake* (1981) 123 Cal.App.3d 59 [176 Cal.Rptr. 186].) We find, however, that the reasoning of *Savala* is more persuasive and its effect more just. As noted in *Savala*, "it is not at all uncommon for a trial court to impose an aggregate sentence intended as *appropriate total punishment under all of the circumstances,* only to discover after an appeal . . . that a portion of the sentence

On remand, the trial court is entitled to reconsider its entire sentencing scheme. (*People* v. *Savala, supra,* 147 Cal.App.3d at p. 71.) However, in order to "preclude vindictiveness and more generally to avoid penalizing a defendant for pursuing a successful appeal" (*People* v. *Collins* (1978) 21 Cal.3d 208, 216 [145 Cal.Rptr. 686, 577 P.2d 1026]), appellant may not be sentenced on remand to a term in excess of his original sentence. (*People* v. *Savala, supra,* 147 Cal.App.3d at pp. 67, 70; see also *People* v. *Hood* (1969) 1 Cal.3d 444, 459 [82 Cal.Rptr. 618, 462 P.2d 370]; *People* v. *Henderson* (1963) 60 Cal.2d 482, 496-497 [35 Cal.Rptr. 77, 386 P.2d 677].)

Finally, we note that the remedy we deem best suited to the interests of justice in this case, remand, is not intended by us to in the future provide the only or necessarily the most appropriate method to rectify section 654 error on appeal. Indeed, staying execution of the penalty imposed for the lesser offense remains the preferred remedy where the reduction in sentence would be relatively minor, or where the maximum *legal* sentence has already been imposed. In such cases, it would not serve the interests of justice or judicial economy to require remand. In cases such as the one before us, however, where appellate correction of the section 654 error would result in a near halving of the original sentence without any necessary warrant to do so in the facts of the case, justice requires remand so that the trial judge may impose a sentence commensurate with culpability.

Since we conclude that the case must be remanded because of the section 654 error, we do not address the alternative arguments advanced by the People.

The case is remanded to the trial court for resentencing in a manner consistent with the views expressed herein.

Rouse, J., and Smith, J., concurred.

A petition for a rehearing was denied August 31, 1984, and appellant's petition for a hearing by the Supreme Court was denied October 25, 1984.

---

is infected by illegality." (*People* v. *Savala, supra,* 147 Cal.App.3d 63, 66, italics added.) Because a trial court imposes a sentence as an "appropriate total punishment under all of the circumstances," we believe that a DSL sentence "must be viewed as one prison term made up of interdependent components. The invalidity of some of those components necessarily infects the *entire sentence.*" (*Id.,* at 68-69, italics added.)

To hold otherwise would require us to ignore the practical realities of sentencing under the DSL.