[Crim. No. 44458. Second Dist., Div. Seven. Dec. 12, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL O. GALVAN, Defendant and Appellant.

1206

## COUNSEL

Jonathan Milberg, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert F. Katz and Susan D. Martynec, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JOHNSON, J.**—This case is before us on remand from our Supreme Court. We were directed to reconsider it in light of footnote 2 in *People* v. *Craft* (1986) 41 Cal.3d 554, 559 [224 Cal.Rptr. 626, 715 P.2d 585].

Appellant Daniel O. Galvan was charged by information in count I with kidnapping in violation of Penal Code section 207.[1] In counts II and III, appellant was charged with rape in violation of section 261, subdivision (2). It was further alleged in those counts appellant acted voluntarily in concert with other persons by force and violence against the will of the victim, Elaine R., within the meaning of section 264.1. In counts IV and V appellant was charged with oral copulation, in violation of section 288a, subdivision (d). Both of these counts also alleged he acted voluntarily in concert with others.

The jury found appellant guilty as charged in counts I through V, and found the allegations that appellant acted voluntarily in concert with others to be true. Probation was denied. As to count I, kidnapping, appellant was sentenced to state prison for the upper term of seven years. The court further sentenced appellant to the upper term of nine years on counts II, III, IV and V, various sex crimes, and ordered these sentences to run concurrently with each other and consecutively to the sentence imposed in count I, for a total of 16 years. Credit was given for 412 days in custody, including conduct credits.

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

Appellant's appeal followed. When this case was last here we considered appellant's contention the trial court violated section 654 by adding a full consecutive term for one of the rape convictions under section 667.6 to the term imposed for kidnapping under section 1170.1. We concluded section 654 did not apply to sentences imposed pursuant to section 667.6, subdivision (c). We also remanded the case to the trial court for a statement of sentence choice regarding section 667.6, subdivision (c).

Appellant raises three issues on appeal. First, he argues the evidence is insufficient to support a conviction for kidnapping. Second, appellant contends the trial court erred in imposing consecutive sentences for the kidnapping and rape charges on the ground the kidnap was part of one continuous transaction with the rape and was motivated by the single objective of sexually assaulting the victim. Third, he argues the trial judge was under the mistaken impression section 667.6, subdivision (c) was mandated rather than set forth in section 1170.1.

For the reasons set forth below, we affirm the judgment but conclude the trial court erred by imposing full consecutive terms for the kidnapping and rape convictions. Thus, we stay the sentence on the kidnapping count and remand this case to the trial court for resentencing.

### FACTS AND PROCEEDINGS BELOW

On January 31, 1981, Elaine R. was planning to celebrate her 18th birthday with her friends, Alexandra and Alexandra's boyfriend, Ray.[2] They had suggested Elaine join them at the home of a friend and at approximately 8:30 p.m. they picked up Elaine at her home and drove to their friend's apartment. That night Elaine was wearing her sister's pink satin dress, stockings, black high heeled shoes and both a short black jacket and a long beige coat, with a fur collar.

There were four people at the apartment other than Alexandra, Ray and Elaine. One was named Angel and another was named Theresa. Elaine drank one margarita while she was there. The group was planning on going to a dance. However, Alexandra and Ray started arguing and left. Elaine decided to accompany the other people to a dance spot called The Villa, located in Santa Ana on 17th Street. Elaine traveled to the club with Theresa and Angel.

---

[2]In appellant's petition to the Supreme Court, he stated "The Court of Appeal's summary of the facts (see pages 3-10 of the Opinion attached hereto as Exhibit 'A') is accurate." We note this statement of facts is substantially identical to that in the respondent's brief. Thus, we treat the facts as being stipulated to by the parties.

Once inside The Villa, Elaine saw a couple of people with whom she was acquainted, including a woman named Diane. She remained at the club until 1:30 a.m. When she left the club, she noticed that Theresa and Angel had already left because their car was gone. At that time she saw a silver Buick Regal and someone inside the Regal called out her name. She recognized the person as someone with whom she had attended Lincoln High School and believed his name was Anthony. She noticed in addition to Anthony, there were four other males seated in the Regal. Therefore, she walked to the car and spoke with Anthony. Elaine was somewhat interested in Anthony and it had been one or two months since she had seen him. Additionally, she was happy to see someone she knew because she needed a ride home.

The men in the Regal asked Elaine if she or any of her friends wanted to go to a party in Garden Grove. At first Elaine responded, "No." However, she then looked around and noticed her friends had left. Therefore, she entered the Regal and went to the Garden Grove party. Appellant was inside the Regal in the front passenger seat. Elaine had never seen appellant before that night.

At the Garden Grove party there were about 15 people present. Elaine was handed a beer. She took maybe two sips of the beer. Elaine spoke with some of the women present and then went to use the bathroom. When she exited the bathroom, police officers were present and were ordering everyone to leave the party. Elaine noticed during the time she was there that Anthony was talking with the girl who lived at the apartment and Elaine never saw him again the entire evening after she left the Garden Grove party. When she left the apartment, Elaine walked over to the Buick Regal. The driver was already there.

The same men who were in the car when Elaine joined them at The Villa, with the exception of Anthony, reentered the vehicle. Elaine also entered and sat in the middle of the front seat. Appellant was again seated next to Elaine in the front passenger seat of the vehicle. Elaine saw other vehicles leaving the Garden Grove party and also noticed an automobile in which some women were traveling was following the Regal. They drove toward Santa Ana which was in the direction of Elaine's home. Elaine was not worried at the time. The driver stopped at a gas station on Fairview and 17th Streets where some of the men in the Regal got out and spoke with the women in the other car. Elaine remained in the Regal. Again, she was not worried because she was thinking that as long as they were in Santa Ana, they could take her home from there. She estimated she lived about 10 minutes away from the location of the gas station. Elaine was not acquainted with the women in the other car, nor did she know where the men in the Regal resided.

When they left the gas station, the driver headed north on Fairview which was away from Elaine's home. It was approximately 2 a.m., or shortly thereafter, and Elaine asked the driver where they were going. Appellant stated they were going to their "hometown," because there was a party there. Elaine then asked the driver to take her home. She told him she lived in Santa Ana. He looked at her and said it was too far and continued driving toward the freeway. Elaine remained quiet and when they reached the freeway she again asked where they were heading and was told they were traveling to a party in Los Angeles. Elaine stated she could not go but appellant told her not to worry, everything would be all right. By that time Elaine was nervous and again stated she wanted to go home and did not want to go to Los Angeles to any party. They responded that everything would be all right and they would take good care of her. Elaine became very apprehensive, nervous and worried. The driver kept looking at her. Both the driver and appellant told her not to worry, everything would be all right. Elaine heard one of the men in the back seat address appellant as "Joker."

The drive on the freeway took about 45 minutes. Elaine told the men four times she wanted to go home. There was very little conversation among the men in the car and this also made her very nervous. The last time Elaine saw the automobile with the women from the Garden Grove party was when both vehicles exited the freeway. After leaving the freeway, they drove for about 10 minutes through an area where there were "projects" or apartments.

Eventually, the driver parked the car at a vacant lot and all the men exited and walked over to a house. Elaine remained in the front seat of the vehicle. She noticed the men were talking to four or five other males for about three or four minutes. The keys had been left in the Regal. Elaine was afraid but was too scared to leave the vehicle. She thought about locking the doors but did not know how to do so because they had electric locks. She also noticed there was not much gas in the car.

Two men entered the Regal. Neither one had been in the car during the trip from Santa Ana. One man had a blanket around him. He sat next to Elaine and the other man sat in the driver's seat. They asked her name. When she inquired why the one man had a blanket, he said because it was cold outside. The man with the blanket remained in the Regal but the other one exited. Appellant then reentered the car.

Appellant told Elaine he did not know how to phrase it but that "the guys wanted to take care of business." Elaine had a good idea what he meant and was terrified. No one had made any comment of a sexual nature up until that time; however, appellant then told her she would have to get into

the back seat with each of his friends. Appellant ordered her to climb into the back seat. Elaine did so because she was scared and also because the man in the driver's seat told her if she did not he would beat her up. Appellant followed Elaine into the back seat. Appellant partially removed his pants and forced his penis into her mouth. A couple of times appellant instructed her to "suck his dick." The driver said if she did not, she would be shot, and appellant threatened to beat her. After several minutes appellant removed his penis from her mouth, pulled off her underclothes, and forced her to lie down. Appellant lay on top of Elaine and forced his penis into her vagina. Elaine was crying but not loudly.

During this time five or six people watched from outside the vehicle. The man in the front seat also watched and Elaine could hear him saying, "Take her outside." The car door then opened and other men pulled her out of the car. Appellant carried her to a grassy area by some hedges. Elaine was first placed on the gravel, but then the man with the blanket spread it on the ground, and she was moved to the blanket. There were approximately eight men standing around. Elaine was terrified. The men were using a lot of "foul" language, laughing and cheering. Appellant again forced his penis into Elaine's mouth. After several minutes he climbed on top of her and forced his penis into her vagina. Appellant told his friends to hold her legs open. Two of the men held Elaine's legs apart. Elaine was not sure whether appellant ejaculated but she remembered him saying, "I am coming."

At one point while appellant was on top of her, the man who had threatened to shoot Elaine hit her on the head with a dark colored object that felt very hard. She also heard someone else say, "Shoot her, shoot her." Elaine estimated four or five other men, besides appellant, touched her in some way. She believed that four or five times other men placed their penises into her mouth. Four different times other men forced their penises into her vagina. Another man stuck his finger into her vagina and someone stuck his finger into her rectum.

During the time appellant was engaged in intercourse with Elaine, the other men removed her jewelry which included a gold chain necklace, three rings and a watch.

Eventually, Elaine heard sirens and the men fled. The police arrived and took her to a hospital for an examination. She tried to talk to the police but was hysterical and could barely talk or walk. She did tell the police that one of the men who assaulted her was named "Joker." At the hospital Elaine's head hurt and she noticed some blood in her vagina. Elaine told officers she could identify the males involved in the rape. Later her parents picked her up and took her home.

## DISCUSSION

### I. THE EVIDENCE IS SUFFICIENT TO SUPPORT THE KIDNAPPING CONVICTION

Appellant contends the evidence was insufficient "to support the kidnaping conviction because of the total lack of any evidence of forcible asportation." ■ On review our power to weigh the evidence is limited by due deference to the trier of fact, therefore the record must be viewed in the light most favorable to the verdict. (*People* v. *Samuel* (1981) 29 Cal.3d 489, 505 [174 Cal.Rptr. 684, 629 P.2d 485].)

■ The Supreme Court held a conviction for violating section 207 will stand "if supported by substantial evidence that although initial entry into a vehicle was voluntary, the victim was subsequently restrained therein by means of threat or force while asportation continued." (Fn. omitted.) (*People* v. *Camden* (1976) 16 Cal.3d 808, 814 [129 Cal.Rptr. 438, 548 P.2d 1110], superseded by statute as stated in *People* v. *Alcala* (1984) 36 Cal.3d 604, 621 & fn. 8 [205 Cal.Rptr. 775, 685 P.2d 1126].)[3] The force used against the victim "need not be physical." (*People* v. *Stephenson* (1974) 10 Cal.3d 652, 660 [111 Cal.Rptr. 556, 517 P.2d 820], disapproved on other grounds in *People* v. *Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) It is settled "movement is forcible where it is accomplished through the giving of orders which the victim feels compelled to obey because he or she fears harm or injury from the accused and such apprehension is not unreasonable under the circumstances. (Citations omitted.)" (*Ibid.*)

Appellant contends that the facts of this case are similar to those in *People* v. *Green* (1980) 27 Cal.3d 1 [164 Cal.Rptr. 1, 609 P.2d 468], superseded by statute as stated in *People* v. *Alcala, supra,* 36 Cal.3d 604, 621 & footnote 8[4] and unlike those in *People* v. *Camden, supra,* 16 Cal.3d 808 and *People* v. *La Salle* (1980) 103 Cal.App.3d 139 [162 Cal.Rptr. 816] because the victim could have left the car on two occasions. Appellant is mistaken.

In *People* v. *Green, supra,* 27 Cal.3d 1, 14, 63 the victim was induced into the defendant's car by fraud. In addition, the 90 feet the victim was transported by the defendant from the car to where he killed her was found to be insufficient to support a kidnaping verdict. (*Id.,* at pp. 65, 67.) In

---

[3]The *Alcala* Court was referring to the subsequent amendment of section 207 with subdivision (b), providing that asportation of a child under 14 for the purposes of molestation is kidnaping.

[4]See footnote 3, *ante.*

*People* v. *Camden, supra,* 16 Cal.3d 808, 811-812 the court upheld the kidnaping conviction because the evidence showed the defendant lured the victim into his car with an offer of a ride and subsequently prevented her from leaving the car while he attempted to take her to his home to have sexual relations with her. Similarly, here, after Elaine left the Garden Grove party with the men in the Buick Regal, the driver drove toward Santa Ana which was in the direction of her home. They stopped at a gas station on Fairview and 17th. At that time Elaine was not at all worried. She remained in the vehicle and thought because they were in Santa Ana they could take her home from there. She lived about 10 minutes away from the gas station.

When they left the gas station, the driver headed north on Fairview which was away from Elaine's home. She then asked them where they were going, and appellant responded that they were returning to their "hometown" to attend a party. Elaine asked the driver if he could take her home. The driver looked at her and said that it was too far. She explained to him she lived in Santa Ana and wanted to go home. The driver, however, continued driving toward the freeway.

When they reached the freeway, Elaine again asked where they were going and was told they were going to Los Angeles. She stated she could not go with them, but appellant told her not to worry, everything would be all right. At this time Elaine wanted to exit the car, but did not do so because they had entered the freeway and she was not willing to jump through the window. She again indicated she did not want to go to the party in Los Angeles but wanted to go home. By then she was nervous and apprehensive. She also noted the driver continued to look at her. After approximately 45 minutes, the Buick exited the freeway and traveled surface streets for about 10 minutes until it entered an area which appeared to be apartment projects. During the trip Elaine had asked, at least four times, to be taken home. The driver parked the car at what appeared to be a vacant lot and all of the men got out. Although Elaine had remained in the front seat of the car and had noticed the keys had been left in the ignition, she was too frightened at that time to exit the car. She did not know how to close the locks on the doors because they were "electric." She also noticed the car was low on gas.

In *People* v. *La Salle, supra,* 103 Cal.App.3d 139, 146-147 the victim entered defendant's car to retrieve her child who was in his car. She told the defendant she wanted to go home but he continued to drive. The court found the victim was compelled to accompany the defendant because she "could not have extricated herself and her daughter from a moving vehicle, and when defendant finally brought the car to a stop, he parked it so close to a building on the right" the victim was unable to exit. (*Id.,* at p. 147.) When, as here, the victim could not have extricated herself from a moving

vehicle and was transported miles away from her home, asportation is sufficient to constitute kidnapping.

## II. The Trial Court Violated Section 654 Prohibiting Double Punishment When It Sentenced Appellant Consecutively for the Rape and Kidnapping Convictions

■ Applicant argues the trial court violated section 654[5] by adding a full consecutive term for one of the rape counts under section 667.6, subdivision (c)[6] to the term imposed in count I for kidnapping under section 1170.1. He claims the kidnap was part of a continuous transaction with the rape and motivated by the single objective of sexually assaulting Ms. R. His position is supported by *People* v. *Masten* (1982) 137 Cal.App.3d 579, 589 [187 Cal.Rptr. 515] which holds the sentencing provisions in section 667.6 do not create a statutory exception to section 654. We agree.

Masten who was convicted of rape, oral copulation and kidnapping, was sentenced consecutively for the kidnapping and rape counts. (*People* v. *Masten, supra,* 137 Cal.App.3d 579, 583, 588-589.) Like appellant in the instant case, Masten argued he could be punished only for one offense under section 654 when the kidnapping was incident to the rape. (*Id.,* at p. 588.) The *Masten* court agreed and rejected the People's argument section 667.6 provided a statutory exception to section 654. It reasoned the legislative history of the section showed any language which could be reasonably construed to provide an exception to section 654 had been excised from the final version of the bill. In addition, the court noted kidnapping was not among the enumerated offenses listed in section 667.6, subdivision (c). It concluded "where kidnaping is but a part of a continuous course of conduct incidental to the commission of sexual offenses, section 654 precludes the imposition of a consecutive term for the kidnap conviction." (*Id.,* at p. 589.) (See 2 Witkin, Cal. Crimes. (1985 Supp.) § 956, pp. 450-451.)

---

[5]Section 654 states: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

[6]Section 667.6, subdivision (c), as it then read, is as follows: "In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace or threat of great bodily harm whether or not the crimes were committed during a single transaction. If such term is imposed consecutively pursuant to this subdivision, it shall be served consecutively to any other term of imprisonment, and shall commence from the time such person would otherwise have been released from imprisonment. Such term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to such term shall not be merged therein but shall commence at the time such person would otherwise have been released from prison."

The People contend *People* v. *Belmontes* (1983) 34 Cal.3d 335 [193 Cal.Rptr. 882, 667 P.2d 686] controls because it was decided after *People* v. *Masten, supra,* 137 Cal.App.3d 579, and infer an implied statutory exception to section 654. The People argue there is no error because the court properly designated the longest nonsex offense as the principal term under section 1170.1 and treated all of the sex offenses under section 667.6, subdivision (c).

In *People* v. *Belmontes, supra,* 34 Cal.3d 335, 339-340, 343 the Supreme Court addressed issues arising from the relationship between sections 667.6, subdivision (c) and 1170.1. The defendant in that case was convicted of kidnapping, rape, oral copulation and sodomy. (*Id.,* at p. 340.) He induced the victim into his car by telling her his brother, whom she had dated, was injured and he would take her to see him. Instead he drove her to a deserted area and attempted to kiss her. After the victim resisted him, he orally copulated her and forced her to orally copulate him. Subsequently, he drove the victim to a more secluded spot and committed additional sexual offenses on her. (*Ibid.*) The trial court sentenced him to the middle base term of five years for kidnapping and, apparently relying on section 667.6, subdivision (c), imposed three fully consecutive six-year sentences for the remaining sex crimes, plus a one-year enhancement for a prior felony conviction. (*Id.,* at p. 342.)

The court concluded the trial court has discretion to choose between the two sentencing schemes. (*Id.,* at p. 345.) It noted "[s]ection 1170.1 sets forth the general sentencing scheme for multiple convictions." (*Id.,* at p. 343.)[7] In comparison, section 667.6, subdivision (c) for sentencing certain enumerated sex offenses is "a much harsher sentencing measure than section 1170.1." (*People* v. *Belmontes, supra,* 34 Cal.3d 335, 344.)

The court concluded "if a defendant is convicted of both sex offenses and nonsex offenses, a trial court may properly designate the longest nonsex

---

[7]Subdivision (a) then read as follows: "Except as provided in subdivision (c) and subject to Section 654, when any person is convicted of two or more felonies, . . . and a consecutive term of imprisonment is imposed under Sections 669 and 1170, the aggregate term of imprisonment for all such convictions shall be the sum of the principal term, the subordinate term and any additional term imposed pursuant to Section 667.5, 667.6, or 12022.1. The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any enhancements . . . . The subordinate term for each consecutive offense which is not a 'violent felony' as defined in subdivision (c) of Section 667.5 shall consist of one-third of the middle term . . . for which a consecutive term of imprisonment is imposed, and shall exclude any enhancements. . . . The subordinate term for each consecutive offense which is a 'violent felony' as defined in subdivision (c) of Section 667.5, . . . shall consist of one-third of the middle term of imprisonment prescribed for each other such felony conviction for which a consecutive term of imprisonment is imposed, and shall include one-third of any enhancements imposed . . . ."

offense as the principal term and may treat all of the sex offenses under section 667.6, subdivision (c)." (*Id.,* at p. 346.) The court further explained a trial court could choose to have a sex offense serve as the principal term if it carried the longest term and treat all other offenses as subordinate terms under section 1170.1 whether or not they included the sex offenses enumerated in section 667.6, subdivision (c). (*Ibid.*) In addition, it stated: "A court could alternatively choose to treat some of the sex offenses under the principal/subordinate scheme of section 1170.1, while imposing fully consecutive sentences on others under section 667.6, subdivision (c)." (*Ibid.*) The trial court should compute the sentences under sections 1170.1 and 667.6, subdivision (c) separately and add their totals. (*Belmontes, supra,* at p. 346.)

Affirming the conviction, the Supreme Court did not discuss the application of section 654 even though the case involved consecutive sentences for kidnapping and sex crimes. (*Belmontes, supra,* 34 Cal.3d at pp. 342, 349.) For this reason, we were previously persuaded that section 654 by implication did not apply to sentences imposed pursuant to section 667.6, subdivision (c) and we declined to follow *People* v. *Masten, supra,* 137 Cal.App.3d 579. We presently reconsider this issue in light of footnote 2 in *People* v. *Craft, supra,* 41 Cal.3d 554, 559 which clarifies that section 667.6, subdivision (c) does not affect the section 654 bar against double punishment. Footnote 2 states in pertinent part: "Although subdivision (c) allows separate punishment for crimes 'committed during a single transaction,' it *does not affect section 654, which prohibits multiple punishment under different code provisions for a single 'act or omission.'"* (Italics added.) In other respects, *Craft* does not apply to the instant case because it construed the phrase "'separate occasions'" in section 667.6, subdivision (d) which is not relevant here. (*Id.,* at pp. 558-559.) Under section 667.6, subdivision (c) "the court has discretion to impose full, separate, and consecutive terms 'whether or not the crimes were committed during a single transaction'" so long as each offense is a separate act within the meaning of section 654. (*Id.,* at pp. 558-559, fn. 2.) Under section 667.6, subdivision (d) the trial court "*must* impose full, separate, and consecutive terms" when the offenses involve separate victims or the same victim on separate occasions. (Italics in original.) (*Id.,* at p. 559.)

Following this directive, we turn to the case at bench to determine if the trial court erred by imposing consecutive sentences for kidnapping and one of the rape counts. Appellant claims the kidnapping and rape were part of a single transaction with a single objective thus section 654 bars double punishment.

The law is settled section 654 applies not only where there is one act but also where a course of conduct violates more than one statute yet

constitutes an indivisible transaction. (*People* v. *Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63].) The initial inquiry in determining whether there is a section 654 violation is to ascertain the defendant's objective and intent. (*People* v. *Beamon* (1973) 8 Cal.3d 625, 639 [105 Cal.Rptr. 681, 504 P.2d 905].) Whether the defendant held "multiple criminal objectives is primarily a question of fact for the trial court, whose finding will be upheld on appeal if there is any substantial evidence to support it." (*Reliable Enterprises, Inc.* v. *Superior Court* (1984) 158 Cal.App.3d 604, 625 [204 Cal.Rptr. 786]; *People* v. *Panky* (1978) 82 Cal.App.3d 772, 782 [147 Cal.Rptr. 341].)

In the case at bench the trial court did not make the threshold finding of appellant's objective and intent. However, since the facts are undisputed it is a question of law whether section 654 should be applied here. (See *People* v. *Perez, supra,* 23 Cal.3d 545, 552, fn. 5.)[8]

The summary of facts reveal appellant's course of conduct constituted an indivisible transaction in which the kidnapping of Ms. R. was incident to the committing of two separate rapes and oral copulations. After the Garden Grove party the victim returned to the Buick Regal occupied by the same men, except for her friend Anthony, who had brought her. She observed other vehicles leaving the party and also noticed an automobile filled with women following the Regal. The driver stopped for gas at a station about 10 minutes from her home. The victim made no attempt to leave the car because she assumed she would be taken home. It was only after they left the gas station and the driver headed away from the direction of the victim's home that she asked where they were going. Appellant replied they were going to their "hometown" for a party. The victim became apprehensive and nervous. The driver kept looking at her and the men said little. Appellant and the driver told her not to worry. After driving on the freeway about 45 minutes, they exited and drove about another 10 minutes to a vacant lot where they parked the car. Although the victim indicated she wanted to go home, she was prevented by appellant and his friends. As we determined above, this constituted sufficient evidence of kidnapping. The male occupants subsequently talked to four or five other men. It is patently clear appellant and his associates intended to transport Ms. R. against her will to a distant location in order to sexually assault her in concert.

Section 654 precludes double punishment when one offense facilitates or is incidental to the commission of another offense. (*People* v. *Perez, supra,* 23 Cal.3d 545, 553-554.) As in *People* v. *Panky, supra,* 82 Cal.App.3d 772, 783 it is clear in the case at bench "the kidnaping had no

---

[8]See footnote 2, *ante.*

independent purpose, but was definitely connected with one or another or all of the crimes which followed it." In *People* v. *Rocco* (1971) 21 Cal.App.3d 96, 101 [98 Cal.Rptr. 365] the codefendants drove the victim to an unpopulated area and raped her. The court concluded the evidence did not suggest a separate intent to kidnap and set aside the kidnapping sentence. (*Id.*, at p. 110.)

Likewise in *People* v. *Laster* (1971) 18 Cal.App.3d 381, 384 [96 Cal.Rptr. 108] defendant was sentenced to consecutive terms for rape, kidnapping, robbery and assault by means likely to produce great bodily injury. Assailants blocked the victim's car and two of them entered it. (*Id.*, at p. 385.) They subsequently overpowered the victim and drove her car four or five miles to a roadside gate. Leaving the car they dragged the victim along the ground off the road. Then defendant and another man raped her. (*Id.*, at pp. 385, 390.) The facts in that case did not reveal appellant had a separate intent and objective to kidnap the victim. (See *id.*, at p. 395.) Consequently the court affirmed the convictions but set aside the sentences for kidnaping and assault as required by section 654. (*Id.*, at pp. 384-385, 395.)

*People* v. *Ratcliffe* (1981) 124 Cal.App.3d 808, 818-819 [177 Cal.Rptr. 627] is distinguishable. In that case the court found there was substantial evidence to support the trial court's implied finding the kidnapping and sex crimes were divisible because the defendant demanded money before sexually assaulting the victim. It is also unlike *People* v. *Fields* (1961) 190 Cal.App.2d 515, 518 [12 Cal.Rptr. 249] in which the court found the kidnaping to be divisible from the rape on the premise the defendant stopped for beer and might have thought the victim would voluntarily submit with the aid of beer.

We therefore conclude the trial court erred by imposing a consecutive sentence for kidnapping and one count of rape. ■ The proper remedy for failing to apply section 654 is to stay the execution of the sentence imposed for the lesser offense, the stay to become permanent upon completion of the sentence for the greater offense. (*People* v. *Masten, supra,* 137 Cal.App.3d 579, 590; *In re Adams* (1975) 14 Cal.3d 629, 636-637 [122 Cal.Rptr. 73], superseded by statute as stated in *People* v. *Burns* (Cal.App.) sub. opn. on rehg. *People* v. *Burns* (1984) 158 Cal.App.3d 1178 [205 Cal.Rptr. 356][9]; see 2 Witkin, Cal. Crimes (1963) § 951, p. 905.) Accordingly, the judgment is modified to stay the sentence for violation of section 207 until appellant has completed the remainder of his sentence, the stay then to become permanent.

---

[9]*People* v. *Burns, supra,* 158 Cal.App.3d 1178, 1182, and footnote 4 characterizes *In re Adam, supra,* 14 Cal.3d 629, as a predeterminate sentencing law case.

### III. THE CASE MUST BE REMANDED FOR RESENTENCING

■ Appellant contends the trial judge mistakenly thought sentencing under section 667.6, subdivision (c) was mandated rather than discretionary as set forth in section 1170.1. We agree the record indicates confusion on the part of the sentencing judge. When asked by the prosecution to state for the record whether the kidnapping was a separate and distinct offense so that section 654 would not apply, the trial court responded in part: ". . . were I not relying on both the fact that I think 654 does not preclude sentencing on those two different types of crimes, the kidnaping plus the sex crimes, and were I not of the opinion that I was mandatorily required to impose it, I might well have considered imposing a consecutive sentence on one of the other counts, as well. . . . I think that this is not only permitted under the construction of 654, but mandated under 667.6(c)." The trial court concluded "the four sex counts are to be the subject of *concurrent* sentences, but, I think, I am mandated under 667.6, subdivision (c) to sentence those *consecutively* to the kidnapping count." (Italics added.) On this basis we remand for resentencing. On remand the trial court can sentence appellant under section 667.6, subdivision (c). If it chooses to do so, it must make a statement of sentence choice. (*People* v. *Belmontes, supra,* 34 Cal.3d 335, 347-348.)

■ A defendant may be resentenced after a successful appeal but he may not be sentenced in excess of his original sentence. (*People* v. *Savala* (1983) 147 Cal.App.3d 63, 67 [195 Cal.Rptr. 193]; *People* v. *Hood* (1969) 1 Cal.3d 444, 459 [82 Cal.Rptr. 618, 462 P.2d 370]; *People* v. *Henderson* (1963) 60 Cal.2d 482, 495-497 [35 Cal.Rptr. 77, 386 P.2d 677].)[10] Moreover, respondent concedes the maximum sentence allowable under these circumstances is 16 years. The new sentence imposed must expressly give credit for the time appellant has served on *the* original sentence. (*People* v. *Superior Court (Duran)* (1978) 84 Cal.App.3d 480, 489 [148 Cal.Rptr. 698]; Pen. Code, § 2900.1.)

### DISPOSITION

The judgment is modified to stay the sentence for violation of section 207 until appellant has completed the remainder of his sentences, the stay then to become permanent. The case is remanded for resentencing consistent

---

[10]On this point the trial court stated: "I have also indicated that were it not for the fact that I believe I am required to, and properly have imposed a consecutive sentence on one of the sex counts with the kidnapping [sic] count, that I might very well have imposed some different type of sentence. But it seems to me that bearing in mind that 16 years, I believe, is the minimum that I can impose, and bearing in mind the upper base, which I think is appropriate, that I think it would be inappropriate to require any additional time."

with the views expressed herein. In all other respects, the judgment is affirmed.

Lillie, P. J., and Thompson, J., concurred.