[No. H002490. Sixth Dist. Feb. 16, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES LEE ROBINSON, Defendant and Appellant.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and William T. Lowe, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steven White, Chief Assistant Attorney General, David D. Salmon, Blair W. Hoffman and Christopher Grove, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

AGLIANO, P. J.—

I

This case involves the application of Penal Code section 654's prohibition against multiple punishment in the context of violent crimes involving multiple victims.

## BACKGROUND

On February 12, 1986, Arthur and Ava Baldwin were vacationing in Monterey with Ava's[1] sister and brother-in-law, Don and Betty Rockey. At approximately 6 a.m. the two couples were preparing to leave their room at the Thunderbird Motel in Seaside when defendant came into the room, grabbed Arthur and put a knife to his throat. Going to her husband's rescue Ava attacked the defendant. Defendant struck Ava clawing at her neck with his fingernails and knocking her against a wall. Maintaining his hold on Arthur, defendant said, "I'll kill him. I'll kill him. I'll kill him." When Ava approached defendant again he hit her in the head with his thigh knocking her across the room and to the ground. Don heard Betty and Ava screaming and came out of the bathroom. At that point Betty and Don grabbed defendant's hair while Ava came at defendant from the side enabling Arthur to break free. Don kneed defendant in the head. Defendant pushed Don, Arthur and Ava onto the bed and hit Betty. When the victims renewed their attack on defendant, he stabbed Don in the forehead. The victims then pushed defendant outside and he fled.

Shortly afterwards the police took the victims to a location about a half-mile away from the motel where they identified defendant as the person who had attacked them.

Ava suffered a head injury, a gouge to her neck, black eyes and a severely sprained ankle. Don suffered a stab wound to the forehead which required 14 stitches. Betty suffered various bruises.

Following a jury trial defendant was convicted of: Count I: first degree burglary (Pen. Code,[2] §§ 459, 461), with the personal use of a knife (§ 12022, subd. (b)). The jury further found that in the commission of the burglary defendant, with the specific intent to do so, inflicted great bodily injury upon two victims, Don Rockey and Ava Baldwin (§ 12022.7); count II: assault with a deadly weapon or by means of force likely to produce great bodily injury (ADW) upon Arthur Baldwin (§ 245, subd. (a)(1) (hereafter § 245(a)(1)); count III: ADW (§ 245(a)(1)) with the intentional infliction of great bodily injury on victim Ava Baldwin; count IV: ADW (§ 245(a)(1)) with the intentional infliction of great bodily injury upon Don Rockey (§ 12022.7); count V: battery (§ 242) upon victim Ava Baldwin; count VI: battery with serious bodily injury (§ 243, subd. (d)) upon victim Don Rockey, and with personal use of a knife (§ 12022, subd. (b)). The jury also found true the allegation that count I was committed against a victim

---

[1] We employ the first names of the parties involved not intending disrespect but for the sake of clarity and convenience.

[2] All further statutory references are to the Penal Code.

sixty years of age or older who suffered great bodily injury during the course of the offense (§ 1203.09).

Prior to the commencement of trial defendant admitted he had previously been convicted of a serious felony within the meaning of section 667, subdivision (a) and had served a prison term within the meaning of section 667.5, subdivision (b).

The court sentenced defendant to an unstayed prison term of 17 years. Following is a summary of the judgment.

| Count I: | Term |
|---|---|
| Burglary (§§ 459, 461) | 6 years |
| Enhancement for great bodily injury (GBI) upon Don Rockey (§ 12022.7) | 3 years |
| GBI upon Ava Baldwin (§ 12022.7) | 3 years (stayed) |
| Personal use of a knife (§ 12022, subd. (b)) | 1 year consecutive |
| **Count II:** | |
| ADW on Arthur Baldwin (§ 245(a)(1)) | 1 year consecutive (1/3 the middle term) |
| **Count III:** | |
| ADW on Ava Baldwin (§§ 245(a)(1)) | 1 year consecutive (1/3 the middle term) |
| GBI on Ava Baldwin (§ 12022.7) | 3 years (stayed) |
| **Count IV:** | |
| ADW with GBI on Don Rockey (§§ 245(a)(1), 12022.7) | 3 years (stayed) |

Count V:

| | |
|---|---|
| Battery on Ava Baldwin (§ 242) | 6 months (stayed) |

Count VI:

| | |
|---|---|
| Battery with serious bodily injury with personal use of a knife (§§ 243, subd. (d), 12022, subd. (b)) | 3 years (stayed) |
| Prior serious felony enhancement (§ 667, subd. (a)) | 5 years consecutive |

## DISCUSSION

█ Defendant contends that requiring him to serve the terms imposed for the burglary (count I) and two of the assault convictions (counts II and III) violated the multiple punishment proscription of section 654 since the assaults were charged and proven to be objects of the unlawful entry into the motel room and thus constituted parts of a single course of conduct for which punishment for only one crime could be ordered served.

█ " 'The proscription against double punishment . . . is applicable where there is a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute . . . . The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one.' " (*People* v. *Miller* (1977) 18 Cal.3d 873, 885 [135 Cal.Rptr. 654, 558 P.2d 552], quoting *People* v. *Bauer* (1969) 1 Cal.3d 368, 376 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398].)

Notwithstanding this general prohibition, a defendant may be punished for those convictions arising from an indivisible course of conduct which are based on crimes of violence committed against different victims. (*Ibid.*) This exception to the application of section 654 is justified by the statute's own purpose, which is " 'to ensure that defendant's punishment will be commensurate with his criminal liability.' [Citation.]" (*Ibid.*)

The trial court relied upon this exception when it imposed punishment on counts I, II and III saying: "It's an interesting point of law on whether any of the 245's can run consecutive, but to me they were individual acts of violence against the various victims. The intent—none of us know exactly what the jury based their decision on, but it was obvious that the defendant had some felonious intent when he entered the motel, but I think to say that when he attacks a number of people that he can't be punished for it is not consistent. [¶] So the appellate courts will decide whether it can or can't be. But to me, there were individuals [*sic*] acts of violence against different victims."

■ Defendant claims the aforementioned exception to section 654 was improperly applied in the instant case because burglary is a crime against property, not a crime of violence. The People concede the burglary and the two assaults were parts of an indivisible course of conduct, but argue the multiple sentences were proper since each punished offense involved a different victim of violent crime. We agree.

In *Miller, supra,* 18 Cal.3d 873, the defendant and an accomplice entered a jewelry store to commit robbery. While salesperson John Keating waited on the accomplice, Miller approached Charles Burk, a security guard, and told him: "This is a goddam holdup." A struggle ensued during which defendant shot Burk. Meanwhile, the accomplice exhibited a gun and ordered Keating to the floor. Defendant and his accomplice then relieved the store of jewelry valued at some $441,000.

Miller was convicted of robbery, burglary and assault with a deadly weapon. The trial court ordered the service of terms for each conviction. On appeal, Miller argued the sentence violated section 654's proscription against double punishment. The Supreme Court ordered the term for assault of the security guard stayed, but held that section 654 did not preclude execution of sentence on the robbery and burglary counts. The court reasoned as follows: "In the instant case the victim of the robbery as alleged, proved and found to be true was John Keating who was accosted and threatened at gunpoint. The robbery of a victim at gunpoint has been held to be an act of violence such as to preclude application of section 654 in the case of multiple convictions involving multiple victims. [Citations.] Although a burglary does not necessarily involve an act of violence against any person, sections 459 and 461 define the instant crime as a burglary in the course of which the defendant intends to and does inflict great bodily injury on an occupant of the premises burglarized. Thus the burglary alleged, proved and found to be true is a crime of violence committed against

Burk. Defendant being convicted of a second crime of violence against a second victim, section 654 does not preclude the imposition of punishment for both the robbery and the burglary convictions." (*Id*. at p. 886.) Since the assault was committed during the same course of conduct and involved the same victim as in the burglary conviction, the court stayed imposition of sentence as to that count.

In a footnote, the court noted that its decision did not depend on its determination that Burk was not alleged as a victim of the robbery: "Even had defendant been convicted of a robbery involving both Keating and Burk as victims, section 654 would not be applicable to preclude punishment for both that crime and the burglary involving Burk as a victim, *as each crime would involve at least one different victim.*" (*Ibid*., italics added.)

In the present case count I of the information alleged defendant entered the premises "with the intent to commit theft, robbery, . . . assault with a deadly weapon with intent to commit great bodily injury, . . . and assault with intent to commit robbery, . . ." The court charged the jury that it must find defendant entered the motel room with the intent to commit theft, assault with a deadly weapon or robbery in order to find defendant guilty of burglary.[3]

Defendant contends the *Miller* rationale is inapplicable in the instant case because the great bodily injury allegation is no longer contained in the definition of the substantive offense, but instead is authorized by section 12022.7. Defendant argues it is improper to rely upon an enhancement provision as the sole basis for finding an otherwise nonviolent offense to be a crime of violence. We disagree.

Section 12022.7 is part of the Uniform Determinate Sentencing Act of 1976 (DSL). Prior to the enactment of the DSL, "allegations that could increase punishment, such as personal use of a firearm, great bodily injury, or being armed with a deadly weapon, were spread throughout the Penal Code; some were contained in the definitions of particular crimes . . . while others merited separate sections . . . With the advent of the DSL, the provisions for such allegations were deleted from the definitions of substantive offenses, were placed in distinct sections, and are now known as

---

[3] There would be no multiple punishment if the jury found only intent to commit theft in convicting defendant of the burglary charge. The assaults in such case would not have been an object of the unlawful entry and would not be deemed parts of an indivisible course of conduct. (Cf. *People* v. *Green* (1985) 166 Cal.App.3d 514, 518 [212 Cal.Rptr. 451].)

'enhancements.' [Citations.]" (*People* v. *Superior Court* (*Mendella*) (1983) 33 Cal.3d 754, 763 [191 Cal.Rptr. 1, 661 P.2d 1081].) In addition to prescribing the punishment for first and second degree burglary, former section 461 provided an aggravated penalty "in any case in which defendant committed burglary and in the course of commission of the burglary, with the intent to inflict such injury, inflicted great bodily injury on any occupant of the premises burglarized . . . ." The fact that the enhancement is now provided for in a distinct section of the Penal Code rather than in numerical association with the underlying substantive offense does not preclude the application of *Miller*. The crucial factor here, as in *Miller*,[4] is that the information charged and the jury found, that defendant committed a violent act upon an individual in the commission of the burglary. Applying this criterion to the facts presented here, we conclude the first prerequisite of the *Miller* exception was met: the burglary was a crime of violence.

The issue then narrows to whether the crimes of violence for which defendant was punished involved different victims. We find they did.

Here the trial court imposed punishment for count I—the burglary with great bodily injury of Don Rockey, and the use of a knife. The court stayed the enhancement for great bodily injury of Ava. It then imposed punishments as to count II—ADW against Arthur, and count III, the ADW against Ava. Thus, each count for which the court ordered service of sentence involved "at least one different victim," of a violent crime as authorized by *Miller*. (*Miller, supra,* 18 Cal.3d 873, 886, fn. 11.) Excluding the prior serious felony conviction enhancement, all other terms, including that imposed for the felonious battery against Don Rockey, were stayed.

In light of the foregoing, we conclude that multiple punishment was imposed within lawful limits.

## II*

. . . . . . . . . . . . . . . . . . .

---

[4] In *Miller,* the great bodily injury aspect of the burglary was invoked pursuant to section 461 which was subsequently repealed. In the instant case, the great bodily injury allegation is authorized by section 12022.7.

*See footnote, *ante,* page 674.

### III

The judgment is affirmed.

Brauer, J., and Capaccioli, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 4, 1988.