[No. B033525. Second Dist., Div. Five. Dec. 12, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
DARRIN LAYTON ANDRUS, Defendant and Appellant.

**COUNSEL**

Michael L. Shultz, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, and Keith H. Borjon, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**ASHBY, J.**—By jury trial appellant Darrin Layton Andrus was convicted of one count of kidnapping, four counts of rape and sodomy, and one count of penetration of the anal opening by a foreign object, to wit, a knife handle. (Pen. Code, §§ 207, subd. (a), 261, subd. (2), 286, subd. (c), 289, subd. (a).) As to the kidnapping and the four counts of rape and sodomy, the jury also found appellant used a deadly weapon, a knife. (Pen. Code, §§ 12022, subd.

(b), 12022.3, subd. (a).) Appellant was sentenced to state prison as described more fully *post*.

About 9:30 p.m. on December 10, 1986, the victim, 22-year-old Jacqueline B., walked from her home to a store near Atlantic and Rosecrans Avenues in Compton to buy cigarettes and candy. When she left the store and crossed the street to return home, appellant approached her from the rear and put a knife to the back of her neck. Appellant told her to walk to "Mr. Glass." She replied, "I don't know where Mr. Glass is," but appellant said, "It's down the street. My father owns it." As they walked down the street appellant held his arm and the knife to her neck. They arrived at a glass shop. Appellant lifted a sliding door and they entered. The building was a three-room store in ragged condition with broken glass and lamps scattered around. It was illuminated by street lights shining through the windows facing Atlantic.

The victim followed appellant's directions because she was afraid of his knife, a kitchen knife with a wooden handle. Appellant told her to lie down on the floor and take off her clothes, which she did. When appellant also removed his clothing, the victim observed unusual scars on appellant's face, neck and body. She also observed a gap in appellant's front teeth.

She lay on her back and appellant inserted his penis in her vagina. Appellant then directed her to get on her knees and he inserted his penis in her rectum. Appellant then repeated these steps, again raping the victim as she lay on her back and sodomizing her as she was on her knees. He had the knife the whole time. Appellant then inserted the handle of the knife into the victim's rectum. She screamed but he told her to shut up. Because the events occurred in a glass store with a mirror on the wall, the victim was able to observe appellant throughout her two-hour ordeal.

The victim asked appellant to let her go, saying she would not tell anyone. Appellant replied that he did not trust her, and he began stabbing her. He stabbed her once in the back of the head; when she covered her head with a hand appellant stabbed her through the hand; appellant also cut the victim over the eye, a knee, and an elbow.

Appellant dressed and ran out of the building. The victim grabbed her coat and fled, bleeding and otherwise nude, to a tavern across the street where she received help and was taken to Martin Luther King Hospital for

emergency treatment of her wounds.[1] A police officer responded to the scene and found a knife and the victim's clothing inside the glass shop.

The victim identified appellant in a photographic showup and later identified appellant in a lineup. She positively identified appellant at trial. She had no doubt at the lineup or at trial. She recalled: "[H]e was ugly, and I couldn't forget that ugly face, I remember seeing it." She testified the perpetrator was not appellant's half brother, Lorenzo, whom she observed in the courtroom.

Appellant testified at trial, denying that he committed the crimes. Through other witnesses he presented a defense that his half brother, Lorenzo Wright, committed the crimes. Cassandra Smith, who was the girlfriend of appellant's father, Layton Andrus, testified that around 9 o'clock the night of the crimes she was on Atlantic Avenue and she observed the victim entering the glass shop with Lorenzo. Later that night she saw Lorenzo running down Atlantic. Although Cassandra Smith learned two or three weeks later that appellant had been arrested, she did not report her observations to the police or district attorney. She waited until the time of trial to discuss it with appellant's attorney. Carol Andrus was appellant's half sister by their father Layton Andrus. She was also Lorenzo Wright's half sister by their mother and a different father (Layton Andrus). She testified that about midnight the night of the crimes Lorenzo came home with blood on his hands claiming that he tried to help a woman who was being attacked in an alley. Appellant came home later. Carol did not tell the police but informed appellant's attorney of this two or three months before trial.

Called as a defense witness Lorenzo Wright, after counsel was appointed to represent him, testified that he did not commit the crimes.

## CONTENTIONS

Appellant raises two issues: (1) that consecutive sentences for the sex crimes and the kidnapping violated Penal Code section 654 and (2) that the trial court erred in denying appellant's motion for new trial on the ground the prosecution did not disclose in discovery that Lorenzo was a suspect in two other attacks on women. Finding no merit to these contentions we affirm.

---

[1] Despite the clear evidence of appellant's stabbing the victim the jury acquitted appellant on an additional count of aggravated assault and infliction of great bodily injury. (Pen. Code, §§ 245, subd. (a), 12022.7.)

## SENTENCE

Pursuant to Penal Code section 667.6, subdivision (c), the trial court sentenced appellant to a total prison term of 61 years.[2] The trial court designated the kidnapping count (count I, Pen. Code § 207, subd. (a)) as the principal term and imposed full, separate and consecutive terms on the other counts, each of which is an enumerated sex offense within section 667.6, subdivision (c).

■ Appellant contends that because he kidnapped the victim for the purpose of committing the sex crimes, Penal Code section 654 requires that execution of the sentence for kidnapping be stayed.[3]

Although appellant's contention is supported by an older line of cases under Penal Code section 654,[4] the most recent authority holds that Penal Code section 667.6, subdivision (c) is a legislatively created exception to the rule that section 654 prohibits separate punishment of multiple acts committed during an indivisible course of conduct. (*People* v. *Anderson* (1990) 221 Cal.App.3d 331, 339-343 [270 Cal.Rptr. 516]; cf. *People* v. *Siko* (1988) 45 Cal.3d 820, 825 [248 Cal.Rptr. 110, 755 P.2d 294] [single act].) After a thorough review of the legislative history the court in *Anderson* concluded, "Although the language in subdivision (c) authorizing consecutive sentences 'whether or not the crimes were committed during a single transaction' is not plain and unambiguous (*People* v. *Jones* (1988) 46 Cal.3d 585, 593 [250 Cal.Rptr. 635, 758 P.2d 1165]), the only reasonable interpretation of the statute is that it creates an exception to section 654's prohibition against multiple punishment for separate offenses committed during an indivisible course of conduct. Had the Legislature used the term 'indivisible transaction' rather than the term 'single transaction,' this conclusion would

---

[2] Penal Code section 667.6, subdivision (c) provides in pertinent part, "In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of . . . subdivision (2) or (3) of Section 261, . . . Section 289, or of committing sodomy . . . in violation of Section 286 . . . by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person *whether or not the crimes were committed during a single transaction.* If the term is imposed consecutively pursuant to this subdivision, it shall be served consecutively to any other term of imprisonment, and shall commence from the time the person would otherwise have been released from imprisonment." (Italics added.)

[3] In appellant's case the practical effect of staying execution of sentence on the kidnapping count and its related enhancement would be to reduce the sentence by nine years.

[4] *People* v. *Laster* (1971) 18 Cal.App.3d 381, 394 [96 Cal.Rptr. 108]; *People* v. *Rocco* (1971) 21 Cal.App.3d 96, 109-110 [98 Cal.Rptr. 365]; *People* v. *Gardner* (1975) 52 Cal.App.3d 559, 562 [125 Cal.Rptr. 186]; *People* v. *Panky* (1978) 82 Cal.App.3d 772, 783 [147 Cal.Rptr. 341]; *People* v. *Wall* (1979) 95 Cal.App.3d 978, 990 [157 Cal.Rptr. 587]; *People* v. *Burns* (1984) 158 Cal.App.3d 1178, 1181 [205 Cal.Rptr. 356] [citing additional cases]; *In re Samuel B.* (1986) 184 Cal.App.3d 1100, 1103 [229 Cal.Rptr. 378]; *People* v. *Galvan* (1986) 187 Cal.App.3d 1205, 1218-1219 [232 Cal.Rptr. 410].

be beyond dispute. In the present context, however, the words 'single' and 'indivisible' have nearly identical meanings. We perceive no reasonable interpretation of the statutory language 'whether or not the crimes were committed during a single transaction' other than that the phrase allows imposition of full-term consecutive sentences where one of the offenses enumerated in the statute was a separate act constituting part of an indivisible course of conduct , notwithstanding the provisions of section 654." (*People* v. *Anderson, supra*, 221 Cal.App.3d at p. 341.) The *Anderson* court therefore concluded that Penal Code section 654 was inapplicable and did not preclude separate punishment for the insertion of a shotgun into the victim's rectum although that offense was only a means of facilitating a robbery for which the defendant was punished on another count. (*Id.* at p. 342.)

Applying *Anderson* here, we conclude Penal Code section 654 does not prevent punishing appellant for both kidnapping and the sex offenses, even though the kidnapping was for the purpose of committing the sex offenses.

Appellant relies on *People* v. *Masten* (1982) 137 Cal.App.3d 579, 589 [187 Cal.Rptr. 515], a similar kidnapping and sex offense case, which briefly considered and rejected the People's contention that Penal Code section 667.6, subdivision (c) created an exception to Penal Code section 654. We follow the more thorough discussion and more recent opinion in *People* v. *Anderson, supra*, 221 Cal.App.3d 331.[5]

## DISCOVERY

■  Appellant moved for a new trial on the ground that the investigating police officer failed to disclose in discovery that appellant's half brother Lorenzo was a suspect in two allegedly similar crimes. The trial court denied the motion for new trial, concluding there was no police misconduct and that overwhelming evidence established appellant as the perpetrator in light of the victim's positive identification and appellant's unique identifying characteristics. We affirm the trial court's ruling.

We observe first that appellant's pretrial discovery motion did not specifically request any criminal information about Lorenzo. (*United States* v. *Agurs* (1976) 427 U.S. 97, 106-107 [49 L.Ed.2d 342, 351-352, 96 S.Ct. 2392].) The item in the discovery motion requesting "anything connected

---

[5] In *People* v. *Jones* (1988) 46 Cal.3d 585, 592 [250 Cal.Rptr. 635, 758 P.2d 1165] and footnote 4, 600 and footnote 8, the Supreme Court disapproved *Masten* to the extent that *Masten* implied section 667.6, subdivision (c) applies only when a person is convicted of more than one enumerated sex offense. In *Masten* itself, no petition for review by the Supreme Court was sought. (137 Cal.App.3d at p. 594.) In *Anderson*, the Supreme Court denied review on September 20, 1990.

with this matter" is not specific. (*United States* v. *Agurs, supra.*) The item requesting "whether any potential witness for the prosecution was on parole or probation at the time of the offense, or at any time between that time and now; whether any such witness had any criminal cases pending at the time of the offense, or has had any pending between that time and now" is inapplicable because Lorenzo was not a witness for the prosecution, nor is there specific evidence that the prosecution considered him to be a potential witness for the prosecution. (Cf. *In re Ferguson* (1971) 5 Cal.3d 525, 532-533 [96 Cal.Rptr. 594, 487 P.2d 1234].)

Whether specifically requested or not, the prosecution has a duty to disclose information in its hands which is favorable to the accused and "substantially material." (*People* v. *Ruthford* (1975) 14 Cal.3d 399, 406 [121 Cal.Rptr. 261, 534 P.2d 1341]; *People* v. *Wright* (1985) 39 Cal.3d 576, 590 [217 Cal.Rptr. 212, 703 P.2d 1106]; cf. *United States* v. *Agurs, supra*, 427 U.S. at p. 107 [49 L.Ed.2d at p. 351] ["obviously exculpatory" evidence "so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce"]; compare *United States* v. *Bagley* (1985) 473 U.S. 667, 682 [87 L.Ed.2d 481, 494, 105 S.Ct. 3375] with *People* v. *Morris* (1988) 46 Cal.3d 1, 30, fn. 14 [249 Cal.Rptr. 119, 756 P.2d 843].) To determine whether the omitted evidence had substantial materiality, it must be evaluated in light of the whole record. (*United States* v. *Agurs, supra*, 427 U.S. at p. 112 [49 L.Ed.2d at pp. 354-355].) Appellant has the burden to show substantial materiality. (*People* v. *Ruthford, supra*, 14 Cal.3d at p. 409.)

Appellant's contention is not that the police had information that Lorenzo committed the crimes of December 10, 1986, with which appellant was charged. The contention is the police had information about Lorenzo's involvement in *other* crimes. The record shows very little about the two other alleged incidents. There is no contention that Lorenzo had been arrested, charged or convicted of either; he was only a suspect in the other incidents. The record does not show when the two other incidents occurred. The record shows no details of the alleged similarities except that they involved sexual attacks in which the female victim was stabbed. Appellant has not shown the other incidents were similar enough to be admissible to show that Lorenzo rather than appellant committed the new offenses. (*People* v. *Farmer* (1989) 47 Cal.3d 888, 921 [254 Cal.Rptr. 508, 765 P.2d 940]; cf. *People* v. *Hall* (1986) 41 Cal.3d 826, 834 [226 Cal.Rptr. 112, 718 P.2d 99].)

The investigating officer testified at the motion for new trial. He acknowledged being aware that Lorenzo was implicated in two similar cases. He explained why he did not consider this to be material when he received the

discovery motion. The reason was that the victim's description of the perpetrator in this case so vividly fit appellant and not Lorenzo that the officer considered Lorenzo eliminated as a suspect. The victim described the pronounced gap in the perpetrator's front teeth and his facial scars. The officer had spoken to Lorenzo before he arrested appellant, and Lorenzo had no gap in his front teeth. Lorenzo was younger, lighter complexioned, and had different hair color than the description given by the victim. The officer had been thorough in interviewing the victim when she positively identified appellant's photo in the photographic showup.

■ Furthermore, even assuming that evidence linking Lorenzo to other crimes should have been disclosed, a new trial is not required because the error was harmless beyond a reasonable doubt. (*People* v. *Ruthford, supra,* 14 Cal.3d at p. 409; *People* v. *Morris, supra,* 46 Cal.3d at pp. 34-35; *United States* v. *Agurs, supra,* 427 U.S. at pp. 112-114 [49 L.Ed.2d at pp. 354-356].) The procedural posture of this case shows it is highly unlikely disclosure of the evidence would have led to a result more favorable to appellant. Appellant's defense that Lorenzo may have committed the crimes charged against appellant was actually presented to the jury; it was rebutted by the victim who observed Lorenzo at trial and who testified the perpetrator was appellant, not Lorenzo; appellant had unique characteristics of appearance, and the jury observed both appellant and Lorenzo; and the discovery issue was raised in a motion for new trial, which was denied by the trial judge who observed the witnesses and evaluated all the evidence.

The victim testified at trial that during the sex offenses she observed a gap in the middle of her assailant's front teeth. His face had scars as if he had been cut or scratched in a fight. When he undressed she observed unusual scars or sores on the body. "[H]e was ugly, and I couldn't forget that ugly face, I remember seeing it." She had no doubt whatsoever about her identification at trial, or at the lineup when she recognized appellant immediately. At trial the court required appellant to expose his upper and lower body and his teeth to the jury. That demonstration showed for the record "there is a scar on his neck, in front, and he has scars . . . on his face. For example, he has one under the left eye, one over the left side of his nose. He appears to have tiny, what you might call pock marks . . . on both sides of his face, more so on the right."

The victim saw appellant's family at trial. She testified the perpetrator was appellant, not his half brother. The investigating officer described Lorenzo at trial before Lorenzo testified. The officer testified Lorenzo had normal teeth with no noticeable gap like appellant's. Lorenzo appeared younger, lighter skinned and with a different hair color than appellant. When Lorenzo subsequently testified for the defense, he showed his teeth to

the jury. The jury had ample opportunity to compare appellant and Lorenzo and to evaluate the claim of mistaken identification. The record indicates no reasonable possibility appellant was misidentified.

When the issue of improper discovery was raised on the motion for new trial, the trial judge was in a good position to evaluate the failure to disclose in light of the entire record. The judge commented, "[T]he evidence against the defendant was overwhelming. The . . . evidence with respect to identification . . . positive identification by the victim . . . she testified that she had ample opportunity to observe the defendant. She positively identified him. [¶] There are some unique features with respect to [appellant], the gap in his teeth for example is an item that was discussed in the trial. The jury heard all of this evidence. [¶] . . . Lorenzo Wright testified at the trial. He testified under penalty of perjury. I appointed an attorney to represent him, confer with him. He denied any implication in this matter."[6]

Under all the circumstances there was no showing of substantial materiality of the nondisclosed evidence; in any event the failure to disclose was harmless beyond reasonable doubt. (*People* v. *Ruthford, supra*, 14 Cal.3d at p. 409.)

The judgment is affirmed.

Lucas, P. J., and Boren, J., concurred.

---

[6] Appellant's father, Layton Andrus, testified at the motion for new trial that after the jury verdict against appellant, Lorenzo told Layton that Lorenzo committed the crimes rather than appellant. The prosecutor argued this testimony should be disbelieved, pointing out that appellant was Layton's biological child but Lorenzo was not.