Filed 9/24/14  P. v. Lagrimas CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C069412 |
| Plaintiff and Respondent, | (Super. Ct. No. SF114042A) |
| v. | |
| DAVID LEON LAGRIMAS, | |
| Defendant and Appellant. | |

Defendant David Leon Lagrimas shot at an inhabited dwelling and also attempted to murder Adrian Arista, who was outside the dwelling.  Convicted of both crimes and sentenced to consecutive terms for the crimes, he appeals.  He contends that punishment for both crimes was prohibited by Penal Code section 654.  (Further code citations, though unspecified, are also to the Penal Code.)  The contention is without merit because the facts supported the trial court's implicit finding that defendant committed the two crimes with separate objectives.

1

BACKGROUND

Defendant and Julia Arista, whom he had previously dated, got into a dispute about the ownership of a laptop computer that defendant had in his possession. Julia's father, Adrian Arista, whose nickname was "Night Owl," went to defendant's home to retrieve the computer. Later, defendant, whose arm was in a sling, told someone that "Night Owl" had jumped him and broken his arm. The broken arm prevented defendant from working.

Several months after the computer incident, defendant tried to run Julia over with his car while she was riding a bicycle. He hit her, and she hit another car and injured her arm. Defendant accused her of being a snitch relating to another matter.

Julia lived with her father and several others. Later on the same day defendant hit Julia on her bicycle, Julia left her residence and went to a nearby store. On her way back, she saw defendant get out of the driver's side of his brother's truck, point a gun at her residence, and fire several shots. At the time of the shooting, four people were in the residence, and several bullets penetrated the residence with one of them lodging in an exhaust fan in the kitchen.

Moments after the shooting, Julia saw her father, Adrian, banging on the door of the residence. He said, "That fucking dude just shot [at] me." He also said he had been on his bicycle and had difficulty getting off the bicycle when the shooting started. Someone else heard Adrian say, "That punk ass bitch David. He missed."

One month after the shooting at the residence, Adrian was shot and killed as he rode his bicycle in front of a house a few blocks from his home. (Defendant was charged with murder and shooting at an inhabited dwelling in connection with Adrian's murder, but the jury was unable to reach a verdict on those counts, which were dismissed in the interest of justice on the prosecution's motion.)

A jury convicted defendant of attempted premeditated murder (§§ 664, 187, subd. (a)) and shooting at an inhabited dwelling (§ 246). The jury also found, with respect to

2

the attempted murder count, that defendant personally and intentionally discharged a firearm (§ 12022.53, subd. (c)) and, with respect to the shooting at an inhabited dwelling count, that defendant personally used a firearm (§ 12022.5, subd. (a)).

The trial court sentenced defendant on the attempted murder count to an indeterminate term of life with possibility of parole, with a consecutive determinate term of 20 years for the firearm enhancement. The court also imposed a consecutive determinate term of one year eight months for shooting at an inhabited dwelling, and the court imposed but stayed the firearm enhancement as to that count. The aggregate sentence was 21 years 8 months, plus life with possibility of parole.

DISCUSSION

Defendant's sole contention on appeal is that the trial court erred by imposing an unstayed term of one year eight months for shooting at an inhabited dwelling. He argues that the attempted murder and shooting at the dwelling were part of one continuous course of conduct having the same objective, and, therefore, punishment for both violated section 654. The contention is without merit because the evidence supports a finding that defendant harbored separate objectives in shooting at Adrian and at the dwelling.

Section 654, subdivision (a) provides in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ." Section 654 has been interpreted to prohibit multiple punishments for a single act or an indivisible course of conduct. (*Neal v. State of California* (1960) 55 Cal.2d 11, 19, disapproved on other grounds in *People v. Correa* (2012) 54 Cal.4th 331, 334.) "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of California, supra,* at p. 19.)

3

On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives independent of and not merely incidental to each other, the trial court may impose punishment for independent violations committed in pursuit of each objective even though the violations shared common acts or were part of an otherwise indivisible course of conduct. (*People v. Centers* (1999) 73 Cal.App.4th 84, 98; *People v. Cleveland* (2001) 87 Cal.App.4th 263, 267-268.)

"The determination of whether there was more than one objective is a factual determination, which will not be reversed on appeal unless unsupported by the evidence presented at trial. [Citation.] The factual finding that there was more than one objective must be supported by substantial evidence. [Citation.]" (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438.) "We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

At the sentencing hearing, defense counsel argued that the trial court was required to stay the sentence on the shooting at an inhabited dwelling count because defendant's sole objective was to shoot Adrian and that striking the residence was only incidental to that objective. The prosecutor responded that there was a separate objective to shoot at the residence and that it may have been defendant's primary objective to shoot at the residence after which he shot at Adrian who happened to be out front. The court did not comment on the arguments before imposing the unstayed term for the shooting at an inhabited dwelling count.

On appeal, defendant claims his "single intent and objective was to shoot Adrian in retaliation for breaking [defendant's] arm while trying to repossess his daughter's laptop. The evidence at trial indisputably showed that the residence . . . was only incidentally struck by shots fired at Adrian while he was alone in front of his residence." In his reply brief, defendant claims "[t]here is no suggestion [in the evidence] that

4

[defendant] intended to fire into that house for any purpose." That claim is patently false. Defendant actually fired into the house, and that constituted substantial evidence that he did exactly what he intended to do. That defendant intended only to shoot at Adrian is but one interpretation of the evidence. Because several of defendant's shots penetrated the residence, another reasonable interpretation of the evidence is that defendant intended to shoot at the residence, as well as at Adrian. He certainly had a motive to shoot into the residence, as Julia lived there. Therefore, substantial evidence supports the trial court's implicit determination that defendant harbored separate objectives in shooting at Adrian and at the dwelling.

Defendant also argues that he cannot be separately punished for shooting at the dwelling because it was the method by which he attempted to murder Adrian. (See *Neal v. State of California, supra,* 55 Cal.2d at p. 20 [defendant could not be punished for arson and attempted murder when arson was means of attempting murder].) Again, this view of the evidence is inconsistent with the trial court's determination that defendant harbored separate objectives in committing the two crimes. The facts support a conclusion that, in addition to intending to kill Adrian, defendant intended to victimize those inside the dwelling. In other words, shooting at the dwelling was not the means of attempting to murder Adrian.

While the trial court's determination that defendant harbored separate objectives in shooting at Adrian and at the dwelling was sufficient to support imposing unstayed terms for both crimes, we also conclude that the multiple victim exception to section 654 applies here.

"There is a multiple victim exception to Penal Code section 654 which allows separate punishment for each crime of violence against a different victim, even though all crimes are part of an indivisible course of conduct with a single principal objective. [Citation.] An assailant's greater culpability for intending or risking harm to more than

5

one person precludes application of section 654.  [Citation.]"  (*People v. Felix* (2009) 172 Cal.App.4th 1618, 1630-1631 (*Felix*).)

The attempted murder was directed at Adrian, while the shooting at an inhabited dwelling was directed at other victims – the occupants of the residence.  In this regard, *Felix* is dispositive.  In *Felix*, the trial court imposed concurrent sentences for attempted murder and shooting at an inhabited dwelling.  Relying on *People v. Anderson* (1990) 221 Cal.App.3d 331, 338-339, the court in *Felix* concluded that the houseguests were victimized by the shooting into the dwelling although they were "not named victims in any other count.  It follows that the trial court properly declined to stay the sentence on count 2 (shooting at an inhabited dwelling) because it is governed by the multiple victim exception to Penal Code section 654."  (*Felix, supra*, 172 Cal.App.4th at p. 1631; see also *People v. Garcia* (1995) 32 Cal.App.4th 1756, 1782.)  Here, the occupants of the residence were not the victims of the attempted murder charge.  Therefore, the consecutive sentence for the conviction of shooting at an inhabited dwelling did not violate section 654.

DISPOSITION

The judgment is affirmed.


                                                      NICHOLSON      , J.


We concur:



      RAYE              , P. J.



      HOCH             , J.